**MICHAEL E. FARNELL**, OSB #922996
Email: mfarnell@pfglaw.com
**W. BLAKE MIKKELSEN**, OSB #074604
Email: bmikkelsen@pfglaw.com
PARSONS FARNELL & GREIN, LLP
1030 SW Morrison Street
Portland, Oregon 97205
Telephone: (503) 222-1812
Facsimile: (503) 274-7979
*Of Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| ROCKY MOUNTAIN CONSTRUCTION, LLC, an Oregon limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a foreign corporation,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

Rocky Mountain Construction, LLC submits the following Complaint and alleges as follows:

**PARTIES**

1.   Plaintiff Rocky Mountain Construction, LLC ("RMC") is, and at all material times was, a limited liability company organized under the laws of the State of Oregon with its principal place of business in Klamath Falls, Oregon.

2. Defendant Travelers Property Casualty Company of America ("Travelers") is a foreign insurance corporation organized under the laws of the State of Connecticut with its principal place of business in Connecticut. Travelers transacts business and issues insurance policies in the State of Oregon.

## JURISDICTION AND VENUE

3. Jurisdiction is properly before this Court pursuant to 28 U.S.C. § 1332 in that complete diversity exists between RMC and Travelers and the amount in controversy in this insurance coverage dispute exceeds $75,000.00.

4. Under 28 U.S.C. § 1391, venue is proper in this judicial district, as this action involves a dispute regarding availability of insurance coverage under a policy that was issued by Travelers to RMC's address in this judicial district, the policy covered property located in this judicial district, and the covered property was damaged in this judicial district.

## THE POLICY

5. Travelers issued to RMC a boiler and machinery policy, number BME1 – 0C383644-TIL-17, entitled "*EnergyMax 21* Equipment Breakdown Protection," which was in effect from June 22, 2017 to June 22, 2018 ("the Policy").

6. The Policy includes the following grants of coverage that are relevant to this insurance coverage dispute:

> **A. Coverage**
>
> **1. Property Damage (PD)**
>
> We will pay for direct damage caused by a "Covered Cause of Loss" to "Covered Property" located at the Covered Premises shown in the Declarations or elsewhere in this Coverage Part.
>
> "Covered Cause of Loss" is a "Breakdown" to "Covered Equipment" unless the loss is excluded elsewhere in this Coverage Part.

  2. **Coverage Extensions and Limitations**

* * *

  a.  **Business Income Coverage Extension (BI)**

(1) We will pay:

(a) Your actual loss of "Business Income" from a total or partial interruption of business during the "Period of Restoration";

(b) The additional necessary expenses you incur during the "Period of Restoration", over and above the expenses that you normally would have incurred, to reduce or avert the amount of loss under this Coverage Extension.

* * *

  b. **Extra Expense Coverage Extension (EE)**

(1) We will pay your "Extra Expense"

7. The Policy also includes the following definitions that are relevant to coverage for RMC's claim:

  1. **"Breakdown"**

    a. **"Breakdown"** means the following direct physical loss that causes physical damage to "Covered Equipment" and necessitates its repair or replacement:

     (1) Electrical failure including arcing: * * *

     (3) Mechanical failure including rupture or bursting caused by centrifugal force; * * *

  2. **"Business Income"** means the:

    a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

    b. Continuing normal operating expenses incurred, excluding "Ordinary Payroll".

* * *

  5.  **"Computer Equipment"** means:

    a. Your programmable electronic equipment that is used to store, retrieve and process data; and

Page 3 - COMPLAINT
O:\10483001\0005 wbm complaint.doc

  b. Associated peripheral equipment that provides communication including input and output functions such as printing or auxiliary functions such as data transmission.

  It does not include "Electronic Data" or "Media".

* * *

8. **"Covered Equipment"**

  a. "Covered Equipment" means any:

  (1) Communication equipment and "Computer Equipment"; * * *

  (4) Any other electrical or mechanical equipment that is used in the generation, transmission or utilization of energy.

9. **"Covered Property"**

  a. "Covered Property" means any property that:

  (1) You own; * * *

  while located at the Covered Premises shown in the Declarations or elsewhere in this Coverage Part.

* * *

19. **"Period of Restoration"**

  a. "Period of Restoration" means the period of time that:

  (1) Begins at the time of the "Breakdown"; and

  (2) Ends on the earlier of:

   (a) The number of consecutive days indicated for the applicable "Period of Restoration" extension shown in the Declarations or elsewhere in this Coverage Part after the date when the property at the Covered Premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; * * *

**THE LOSS**

  8. On or about September 21, 2017, two power surges shut down RMC's asphalt manufacturing plant in Klamath Falls, Oregon, and damaged a BC-250 blending control system ("BC-250") used to control the manufacture of asphalt at the plant.

Page 4 - COMPLAINT
O:\1048300\0005 wbm complaint.doc

9.　　Because of the physical damage to the BC-250 caused by the power surges, the plant did not operate properly after the return of power and was unable to produce asphalt mix to required specifications.

10.　　RMC lost significant income between September 21, 2017 and October 18, 2017 as a result of the reduced quality of asphalt mix caused by the damage to the BC-250, as RMC was required to extend quality control deductions on the price of its asphalt sold to its customers, discard some asphalt altogether, remove defective asphalt after installation, and incur additional expenses. RMC's loss of income as a result of the damage to the BC-250 is no less than $258,846.94.

11.　　As a result of the physical damage to the BC-250 caused by the power surges, and to mitigate against further loss of income and comply with conditions of the Policy to "reduce or avert loss," RMC was required to replace the BC-250 control system at a cost of $272,313.32.

12.　　After the BC-250 was replaced with a new control system, the plant produced asphalt within required specifications.

## TRAVELERS' DENIAL OF COVERAGE

13.　　RMC timely notified Travelers of the damage as a result of the power surges and requested coverage under the Policy.

14.　　On or about October 23, 2017, Travelers Risk Control Consultant David Meeker visited the RMC plant to inspect the BC-250. Mr. Meeker spent a few hours on the site, took a few photographs, and then departed. During Mr. Meeker's visit, the BC-250 displayed erratic signals and did not function properly.

15.　　After Mr. Meeker's visit to the plant, Travelers claimed that it was unable to determine if the power surges caused physical damage to the BC-250 and refused to accept

coverage. Travelers did not maintain that the power surges did not cause physical damage to the BC-250. Instead, Travelers' purported reason for refusing to accept coverage was that, based on Mr. Meeker's limited investigation, Travelers was unable to determine that physical damage occurred as a result of the power surges.

16. Between Mr. Meeker's October 23, 2017 investigation and May 4, 2018, Travelers repeatedly demanded that RMC perform and fund additional investigation before it would agree that the loss as a result of the power surges was covered.

17. RMC retained an expert to conduct investigation who further opined that the power surges resulted in physical damage to the BC-250 and necessitated its replacement.

18. On May 4, 2018, RMC presented Travelers with its expert's conclusions and again requested coverage for the replacement of the BC-250 system and lost income as a result of the quality control deductions.

19. In response, Travelers continued to refuse to accept coverage, thereby denying coverage for RMC's claim.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

20. Paragraphs 1 through 19 are incorporated herein as if expressly alleged.

21. The Policy is a valid and enforceable contract that obligates Travelers to compensate RMC for all loss covered by the Policy.

22. RMC has fully performed and/or satisfied all obligations and conditions precedent required by the Policy, except any that were waived and/or excused by Travelers, or as to which performance was prevented or no longer required due to Travelers' conduct.

23. The losses referenced in paragraphs 10 and 11 fall within the coverage of the Policy. Under the terms of the Policy, Travelers is required to pay the covered loss in an amount to be proven at trial, but not less than:

    a.     $272,313.32 in property damage; and

    b.     $258,846.94 in loss of income.

24. Plaintiff timely sought payment from Travelers for the property damage and loss of income.

25. Travelers breached the terms of the Policy by refusing to pay the full extent of damage covered and benefits provided by the Policy.

26. As a result of Travelers' breach of the terms of the Policy, RMC has suffered damages in an amount to be proven at trial, up to $531,160.26.

27. All payments due under the Policy were either ascertained or readily ascertainable by Travelers during Travelers' inspection on October 23, 2017. RMC is entitled to prejudgment interest at the rate of 9% per annum from that time forward.

28. Travelers is liable for RMC's reasonable attorney fees pursuant to ORS 742.061.

## SECOND CLAIM FOR RELIEF

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

29. Paragraphs 1 through 28 are incorporated herein as if expressly alleged.

30. The Policy contains an implied covenant of good faith and fair dealing that obligates Travelers to act in good faith in handling any claim submitted by RMC and to refrain from taking any action that interferes with RMC's rights to enjoy the full benefits provided by the Policy and Oregon law.

31. This duty of good faith and fair dealing also extends to the standards set forth in ORS 746.230 *et seq.* and the administrative rules promulgated to that statute, and incorporated by operation of law into the Policy.

32. Travelers' duty of good faith and fair dealing required Travelers to timely investigate RMC's claim to determine coverage.

33. Travelers' duty of good faith and fair dealing required Travelers to affirm or deny coverage within a reasonable time after receiving notice of the loss.

34. Travelers' duty of good faith and fair dealing required Travelers to timely provide a proper explanation of its coverage position in relation to the relevant policy provisions applicable to RMC's claim for coverage and the results of Travelers' investigation.

35. Travelers breached its duty to act in good faith and fair dealing with its insured by, among other things:

    a. Failing to promptly investigate the loss;

    b. Failing to advise RMC of the results of any investigation that Travelers performed;

    c. Insisting that RMC perform and fund the investigation for Travelers, despite Travelers' duty to fully and timely investigate the loss;

    d. Failing to adequately advise RMC of the provisions of the Policy applicable to RMC's claims;

    e. Failing to advise RMC of its rights and obligations under the Policy;

    f. Failing to affirm or deny coverage in a timely manner; and

    g. Failing to settle a claim after it became reasonably clear that the claim was covered under the Policy.

36. As a result of Travelers' breach of the duty of good faith and fair dealing and failure to comply with Oregon law, RMC was:

    a. Deprived of the full rights and benefits under the Policy it purchased from Travelers, including the full payment due under the Policy, as described above; and

    b. Compelled to hire counsel and unnecessarily incur expenses in the pursuit of the benefits and rights provided by the Policy.

37. Plaintiff is entitled to damages as a result of Travelers' breach of the duty of good faith and fair dealing, all of which were reasonably foreseeable at the time of Travelers' breach, including:

    a. The amounts owed under the Policy, as described above; and

    b. Expenses and attorney fees incurred in investigating and pursuing the rights and benefits provided by the Policy.

38. Travelers is liable for RMC's reasonable attorney fees pursuant to ORS 742.061.

WHEREFORE, RMC respectfully prays for judgment in its favor and against Travelers as follows:

1. Damages in amount to be proven at trial, but no less than $531,160.26;
2. Pre-judgment interest at the rate of 9% per annum;
3. Reasonable attorney fees incurred herein;
4. Post-judgment interest at the rate of 9% per annum;
5. Costs and disbursements; and

///

///

6. All other relief that the Court deems just and equitable.

DATED this 5th day of September, 2018.

PARSONS FARNELL & GREIN, LLP

By: s/ Michael E. Farnell
Michael E. Farnell, OSB #922996
Email: mfarnell@pfglaw.com
W. Blake Mikkelsen, OSB #074604
Email: bmikkelsen@pfglaw.com
*Attorneys for Plaintiff*